United States Court of Appeals
FOR THE EIGHTH CIRCUIT

No. 96-2786
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| James Franklin Rounsavall a/k/a | * | Nebraska. |
| Frank Rounsavall, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 1997
Filed:  May 22, 1997
_____

Before LOKEN, BRIGHT and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BRIGHT, Circuit Judge.


        James F. Rounsavall appeals his convictions and sentence for conspiracy to distribute or possess with the intent to distribute methamphetamine, possession with the intent to distribute methamphetamine and money laundering.  He contends that the Government failed to prove a single conspiracy as alleged in the indictment, that testimony referring to his prior incarceration necessitated a mistrial, that the Government offered insufficient evidence of money laundering, that he had no

1

opportunity to challenge his prior convictions before the court imposed a life sentence, and that his poor physical condition supported his motion to depart downward from the statutory minimum sentence. We affirm the convictions and the sentence imposed by the district court.[1]

## I. BACKGROUND

A jury convicted James Rounsavall of conspiracy to possess or possess with the intent to distribute methamphetamine, two counts of distributing methamphetamine and two counts of money laundering. We summarize the evidence in the light most favorable to the jury's verdicts.

The Government offered evidence that James Rounsavall supplied methamphetamine to his sister, Mary Ann Rounsavall, who supplied it to Deana Weniger. Weniger then distributed it to various customers in South Dakota and Nebraska beginning in 1986 or 1987. Later, Mary Ann Rounsavall began supplying a different distributor, Mary Jean Whitefoot, instead of Weniger. After Whitefoot's death, Clyde and Mary Rasmusson became distributors. Finally, James Rounsavall began supplying Laura Figaszewski with methamphetamine to sell to the Rasmussons for distribution after his sister went to prison in 1990.

Mary Ann Rounsavall also owned the Tahquitz Fine Art store. Although James Rounsavall never declared an ownership interest or income from the store, the Tahquitz checking account listed him as having signature rights to the account. The government's evidence showed that the Rounsavalls disguised proceeds from drug sales by depositing them into the Tahquitz account as proceeds from art sales.

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

In 1991, James Rounsavall closed the Tahquitz account by writing a check in the amount of $107,420.49 to purchase two cashier's checks: one to Andrew Fakas in the amount of $101,748.77 and another to Mary Ann Rounsavall for the remaining $5,671.72. James Rounsavall used the first cashier's check to purchase real estate from Fakas. In 1994, James Rounsavall deeded the property to Matthew Kurilich allegedly in consideration for forgiveness of a past debt of $200,000.

James Rounsavall's convictions resulted after the district court declared two mistrials in previous trials. In the first trial, in which the government prosecuted James Rounsavall and his sister, the district court declared a mistrial during the first full day of evidence because a government witness violated the court's motion-in-limine ruling excluding evidence of James Rounsavall's prior incarceration. The court reasoned that the statement justified a mistrial because it occurred very early in the presentation of evidence, was quite prejudicial and the witness's prior failed romantic relationship with James Rounsavall might have motivated her testimony about his incarceration. In the second trial, Mary Ann Rounsavall, a co-defendant, pled guilty after the district court declared the second mistrial as to the case against James Rounsavall. James Rounsavall had become seriously ill with bilateral pneumonia and required hospitalization.

On the sixth day of the third trial, in which James Rounsavall was the sole defendant, Mary Ann Rounsavall testified for the government. The government instructed her not to testify about James Rounsavall's previous incarceration and informed her about the district court's motion-in-limine ruling. Nevertheless, during the defense counsel's cross-examination, Mary Ann Rounsavall testified that she lived with her brother "[w]hen he got out of prison." Defense counsel moved for another mistrial. The district court immediately instructed the jury to disregard the witness's remark and denied the motion for a mistrial. Later, the district court offered to give the jury further cautionary instructions, but the defense counsel declined.

The jury convicted James Rounsavall and the district court denied his motion to depart below the statutory minimum based on poor physical health. Accordingly, the district court imposed the statutorily required life sentence. This appeal followed.

## II. DISCUSSION

James Rounsavall makes five arguments on appeal: (1) the Government's evidence reflected multiple conspiracies rather than a single conspiracy, as alleged in the indictment, (2) a witness's reference to his prior incarceration required a mistrial, (3) there was insufficient evidence to support his convictions for money laundering, (4) the district court imposed a life sentence without providing an opportunity to challenge his prior convictions, and (5) the district court mistakenly refused to depart below the statutory minimum based on his physical condition. We consider each argument in turn.

### A.

According to Rounsavall, the evidence at trial demonstrated several conspiracies with different individuals participating at different times. Thus, he argues that the Government's evidence failed to support a conviction for a single conspiracy as alleged in the indictment. We determine whether multiple conspiracies existed by viewing the evidence in the light most favorable to the jury's verdict. United States v. Cabbell, 35 F.3d 1255, 1262 (8th Cir. 1994). Accordingly, we consider the totality of the circumstances, "including the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved and the time frame in which the acts occurred." United States v. Bascope-Zurita, 68 F.3d 1057, 1061 (8th Cir. 1995), cert. denied, 116 S. Ct. 741 (1996). "A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." Id.

The evidence in this case, including the testimony of Rounsavall's co-conspirators, supports the jury's conclusion that he remained the supplier of methamphetamine while other members of the conspiracy merely replaced one another. The conspiracy maintained its common, overall goal of distributing methamphetamine supplied by Rounsavall. "Although various defendants entered the conspiracy at different times and performed different functions, the conspiracy had one criminal objective: to sell large quantities of methamphetamine . . . ." United States v. Baker, 855 F.2d 1353, 1357 (8th Cir. 1988). Accordingly, we affirm the conspiracy conviction.

**B.**

James Rounsavall also argues that the district court erroneously denied his motion for a new trial after a government witness made an improper statement. During cross-examination by the defense, Mary Ann Rounsavall stated that she lived with her brother "[w]hen he got out of prison." Tr. 1003:3-5. This statement violated the district court's prior ruling to exclude evidence of James Rounsavall's prior incarceration. Defense counsel unsuccessfully requested a mistrial immediately after the statement, as well as after the government's case and at the close of all the evidence.

The decision whether to grant a new trial lies within the discretion of the trial court and we review only for an abuse of discretion. United States v. Flores, 73 F.3d 826, 831 (8th Cir.), cert. denied, 116 S. Ct. 2568 (1996). We determine the prejudicial effect of any improper testimony on a defendant's right to a fair trial by examining the trial context of the error and the prejudice it created with the strength of the evidence against the defendant. Id. at 832. In some cases a curative instruction suffices to correct a prejudicial statement. Id. at 831.

5

In this case, the district court concluded that the improper testimony failed to justify a mistrial. R. at 33. The witness made the improper statement after six days of trial testimony that included "overwhelming" evidence of Rounsavall's guilt. Id. at 37. The district court also noted that the statement occurred during cross- examination by defense counsel, id. at 33; that the prosecution never elicited, repeated or discussed the remark, id. at 34; and that the witness had no motive to hurt the defendant. Id. at 42. In addition, the jury received immediate and appropriate instructions to disregard the improper statement. Id. at 34. The district court also offered to give similar jury instructions at the close of the prosecution's evidence and at the end of trial, but defense counsel declined. Id. at 35.

We conclude that the district court properly considered whether the statement jeopardized Rounsavall's right to a fair trial and did not abuse its discretion by denying his motion for a mistrial.

## C.

Rounsavall next argues that the Government failed to offer sufficient evidence to support his convictions for two counts of money laundering. He asserts that the Government failed to offer evidence that he knew the transactions at issue were designed to conceal the ownership or nature of the drug proceeds and, therefore, the district court erred by denying his motions for judgment of acquittal.

To determine whether sufficient evidence supports a conviction, "We consider the evidence in the light most favorable to the government and reverse only 'if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Taylor, 82 F.3d 200, 201 (8th Cir. 1996) (quoting United States v. Roach, 28 F.3d 729, 736 (8th Cir. 1994)). In order to convict Rounsavall of either count of money laundering, the Government must show beyond a reasonable doubt that (1) Rounsavall purchased the property in question, (2) the purchase involved the

proceeds of the illegal drug sales, (3) Rounsavall knew that the property represented the proceeds of the illegal drug sales, and (4) Rounsavall knew that the purchase was designed to conceal the nature, ownership, source, or control of the proceeds of the drug sales. See United States v. Rockelman, 49 F.3d 418, 422 (8th Cir. 1995) (citing 18 U.S.C. § 1956(a)(1)(B)(I)). "'[T]he purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds used to make the purchase were obtained from illegal activities.'" Id. (quoting United States v. Sanders, 928 F.2d 940, 946 (10th Cir.), cert. denied, 502 U.S. 845 (1991)).

The money laundering statute's scope includes "the purchase, sale or disposition of any kind of property as long as the disposition involves a monetary instrument." United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir. 1990). The statute explicitly applies to deposits and withdrawals from a bank account, and purchasing or selling real estate. 18 U.S.C. § 1956 (a)(1)(c)(3-4). This court stated, "[A] deposit of money in a bank and the subsequent use of that money to purchase a house are two transactions within the scope of the statute." Blackman, 904 F.2d at 1257.

In this case, the Government offered evidence that Rounsavall deposited drug proceeds into the Tahquitz account and claimed they were proceeds from art sales. By writing a check on the account to purchase the two cashier's checks, Rounsavall violated the money laundering statute because the check represented drug proceeds disguised as art proceeds. The Government also offered evidence that Rounsavall used the disguised drug proceeds to purchase real estate, which he later sold to Matthew Kurilich. When Rounsavall sold the real estate, which represented the drug proceeds used to purchase the property, the violation continued. Although Rounsavall never attempted to conceal his identity or ownership of the property, the transactions violated the money laundering statute because he initially disguised the proceeds from drug sales as proceeds from art sales. Accordingly, we affirm the money laundering convictions.

7

**D.**

Rounsavall contends that the district court erroneously imposed a life imprisonment sentence without inquiring whether he denied his prior convictions and informing him of the right to challenge those convictions as required by 21 U.S.C. § 851(b). The Government argues that any error was harmless because 21 U.S.C. § 851(e) precluded Rounsavall from challenging his prior convictions because they occurred more than five years ago. In addition, the Government argues that Rounsavall failed to show prejudice from the error because he did not identify which of his prior convictions he would challenge and on what grounds he would challenge them if given the opportunity.

Section 851(b) requires the district court to inquire whether the defendant affirms or denies his prior convictions. "All courts of appeals which have considered the question presently hold that failure to engage in the colloquy required by section 851(b) is subject to 'harmless error' analysis." United States v. Romero-Carrion, 54 F.3d 15, 18 (1st Cir. 1995). Without statutory authority, a defendant cannot collaterally attack prior convictions used to enhance his sentence. Custis v. United States, 114 S. Ct. 1732, 1734 (1994). The Court, however, excluded challenges to prior convictions obtained in violation of the right to appointed counsel from this general rule.[2] Id. Although § 851 allows a defendant to attack a prior conviction, 21 U.S.C. § 851(c), it also precludes challenges to convictions "which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e).

Because Rounsavall's prior convictions occurred more than five years ago, see Presentence Report ¶¶ 52-54, and he does not contend that he was denied the right to

---

[2]The Supreme Court distinguished ineffective assistance of counsel claims from denial of counsel claims, and excluded only the latter from the general rule against collaterally attacking prior convictions used to enhance a sentence. Custis, 114 S. Ct. at 1738.

counsel, see Appellant's Br. at 21 (suggesting challenges based on eighth amendment and ineffective assistance of counsel), the district court's error was harmless. Accordingly, we affirm the life imprisonment sentence imposed by the district court.

**E.**

Finally, Rounsavall contends that the district court erroneously denied his motion to depart from the statutory mandatory minimum sentence due to poor physical condition. This court recently held that "a motion by the government . . . for substantial assistance was 'the only authority for [a] district court to depart below the statutorily mandated minimum sentence. . . .'" United States v. Rabins, 63 F.3d 721, 727 (8th Cir. 1995) (quoting United States v. Rodriguez-Morales, 958 F.2d 1441, 1444 (8th Cir. 1992)), cert. denied, 116 S. Ct. 1031 (1996). No authority exists for a sentencing court to depart from a statutory minimum sentence based on the defendant's physical condition. Id. at 727 & n.10 (noting that 18 U.S.C. § 3553(f), enacted after Rodriguez-Morales, allows for departures under specified circumstances, but does not include physical impairment as ground for departure). Accordingly, we affirm the district court's refusal to depart below the statutory minimum sentence.[3]

## III. CONCLUSION

For the reasons discussed above, we affirm Rounsavall's convictions and the sentence imposed by the district court.

---

[3]Physical condition ought to be a consideration in sentencing. Serious illness may very well bear on whether a defendant might commit other crimes. Further, it is a waste of prison resources and taxpayers' money to imprison seriously ill persons for long periods of time when such imprisonment means hospital and medical care at government expense.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.