# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1477

_____

United States of America,

        Appellee,

v.

Donald Lee Dugan,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: September 15, 2000
Filed:   January 31, 2001

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

A seven-count indictment named Donald Lee Dugan, a car salesman and owner of Dugan Auto Sales, in two counts, charging him with conspiring to knowingly and intentionally distribute or possess with the intent to distribute marijuana and conspiring to commit money laundering. The jury acquitted Dugan of the marijuana conspiracy count but convicted him of conspiring to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h). The money laundering count was predicated on Dugan's purchase of a motor home for Donald Zakrzewski using proceeds of the illegal drug

trafficking offense and concealing Zakrzewski's ownership. Dugan now appeals his conviction, challenging the sufficiency of the evidence, and we affirm the judgment of the district court.[1]

There is sufficient evidence to support a verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned. United States v. Ryan, 227 F.3d 1058, 1063 (8th Cir. 2000). "We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and [we] will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Sandifer, 188 F.3d 992, 995 (8th Cir. 1999).

The elements of a § 1956(a)(1)(B)(i) money laundering violation are: (1) that the defendant conducted a financial transaction involving the proceeds of unlawful activity; (2) that the defendant knew the proceeds involved in the transaction were the proceeds of an unlawful activity; and (3) that the defendant intended "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i) (1994); see also United States v. Rounsavall, 115 F.3d 561, 565 (8th Cir.), cert. denied, 522 U.S. 903 (1997). "To prove a conspiracy to launder money, the government must establish that a defendant knowingly joined a conspiracy to launder money and an overt act in furtherance of that conspiracy." United States v. Hildebrand, 152 F.3d 756, 762 (8th Cir.), cert. denied, 525 U.S. 1033 (1998). The object of the money laundering

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

conspiracy here was to conceal the nature of Zakrzewski's drug proceeds, his control of those proceeds, and his ownership of the Winnebago.

Dugan contends that in considering whether the government satisfied the elements necessary to demonstrate a money laundering conspiracy, we should not use any evidence that related to his own involvement in the conspiracy to distribute or possess marijuana, because he was acquitted of that charge. We disagree. An acquittal of a charge may be based on any number of reasons, including an inclination to be merciful. See United States v. Whatley, 133 F.3d 601, 606 (8th Cir.), cert. denied, 524 U.S. 940 (1998). The same jury may nevertheless reasonably conclude that the evidence supports a guilty verdict on another charge. See id. The only question before us is whether there was enough evidence presented at trial to support Dugan's conviction. See id. On this question, we consider the entire record.

The record demonstrates through several witnesses that Dugan was aware of Zakrzewski's marijuana trafficking activity. Viewing the evidence in the light most favorable to the verdict, the jury could have found that Dugan knowingly supplied a Winnebago motor home, as well as other vehicles, to aid Zakrzewski's illegal drug activity, that Dugan knew he was dealing with the cash proceeds of this illegal drug activity, and that he knowingly aided in concealing Zakrzewski's role as the source of the unlawful proceeds. Specifically, the evidence demonstrates the following.

Mary Kania, an employee of Dugan Auto Sales and a romantic interest of Dugan's, and Kania's son, Brad Cancienne, were both marijuana users. Dugan introduced Zakrzewski to them as someone from whom they could obtain large amounts of marijuana. Kania twice accompanied Dugan to Tucson, Arizona, for the purpose of picking up marijuana for Zakrzewski. (Dugan made a third trip to Tucson as well, which is discussed later.) Upon their return, the marijuana-filled boxes were unloaded in Dugan's garage, and Zakrzewski and Cancienne arrived at Dugan's garage

3

to break down the boxes into deliverable portions. Dugan did not participate in that activity but was aware it was happening in his garage.

Tonya Statler made several trips to Tucson to transport marijuana to St. Louis for Zakrzewski. On one occasion, Zakrzewski sent her to Dugan Auto Sales to pick up a white truck for the trip. When she arrived, Dugan handed her the keys to the vehicle without speaking a word to her and without expecting her to pay him any money. Cancienne used the same truck to deliver drug money to Tucson and subsequently simply returned the truck to Dugan's business. Statler also purchased a minivan from Dugan, which she used to pick up marijuana in Tucson.

Zakrzewski's half sister, Theresa, was married to Billy Ysaguirre. Both were heavily addicted to drugs, and both aided Zakrzewski's illegal marijuana enterprise in many ways. They took several trips to Tucson to transport marijuana to St. Louis and to deliver drug money for Zakrzewski. Also, Zakrzewski used Theresa to apply for the title and license to a motor home that he purchased from Dugan Auto Sales.

In early October 1997, Dugan purchased a 1995 Corvette for Zakrzewski for $21,000. Zakrzewski paid $8,000 cash and Dugan wrote a check drawn on Dugan Auto's account for the balance. The following day, Dugan made two cash deposits to cover the check. He deposited $7,000 in the morning and $6,000 in the afternoon. At trial, he could not remember where he got the cash or why he structured the deposits to avoid depositing over $10,000 other than his assertion that it was not unusual for him to make more than one deposit a day.

Also in October 1997, Dugan purchased a 1997 Ford Winnebago motor home for $32,750 through his business at Zakrzewski's request. Dugan applied a $9,000 cash down payment toward the purchase. Zakrzewski asked Theresa to get license plates for the Winnebago. She and her husband, Billy, went to Dugan Auto Sales where she signed already completed papers applying for the title and license, but she brought no money for the transaction. Dugan needed a trade-in or cash to complete the appropriate

4

paper work. In a telephone call with Zakrzewski, who was in Tucson, he told Dugan to give the Winnebago's plates to Theresa and give Billy whatever he wanted. The paperwork indicated a $4,000 car trade-in from Billy and Theresa, though they testified that their old car was worth only approximately $200. Billy then picked out a Cougar from the lot worth about $3,000 for himself to drive. Theresa signed papers for the Cougar and again paid no money. Dugan testified that Zakrzewski bought the Winnebago for Theresa, but she testified that she merely signed the papers and obtained the plates at Zakrzewski's request.

The source of the cash used to purchase the Winnebago is obscured in the record. Financial records show the initial $9,000 cash down payment on the Winnebago, plus a $7,000 cash payment in November and a $7,000 cash payment in December 1997. The final payment in December was a $9,910 check drawn from the account of Dugan Auto Sales. The check initially failed to clear and was returned for insufficient funds. Dugan subsequently made three cash deposits to cover the check and testified that the money eventually came from Zakrzewski, though later on the same day of trial he testified that he could not remember exactly where each of the deposits came from that covered the check.

Dugan took a third trip to Tucson for Zakrzewski, driving the 1997 Ford Winnebago motor home. Zakrzewski had fronted Dugan $25,000 to purchase a load of marijuana and bring it to St. Louis for resale, but Dugan had returned empty-handed and kept the money (indicating he knew the real purpose behind the trips to Tucson, though he denied it at trial). The Winnebago was also used by others on at least two additional occasions to transport money or marijuana between Tucson and St. Louis.

Dugan attempts now to attack the credibility of the government's witnesses who testified concerning his knowledge of the illegal nature of the cash. In considering the sufficiency of the evidence, however, our role is not to reweigh the evidence or to test

the credibility of the witnesses: "Questions of credibility are the province of the jury." United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). We must only determine whether the government presented sufficient evidence on each element of the crime to support the jury's verdict. See id. We conclude that the evidence is sufficient to support each element of conspiracy to launder money.

Dugan argues that the evidence was insufficient to demonstrate that he intended to conceal the proceeds; he asserts that the government has shown nothing more than an ordinary commercial transaction in which his identity was not concealed in any way. Dugan misses the point. The fact that Dugan was conspicuously connected to the proceeds and to the transaction is not dispositive here. Dugan was not laundering the proceeds of his own illegal activity, but was conspiring to launder the proceeds of Zakrzewski's illegal marijuana distribution activities. The element of concealment is satisfied here because Zakrzewski, who was in control of the illegal proceeds, was not conspicuously connected to the cash proceeds through the commercial transaction.

Zakrzewski attempted to conceal his involvement by having his sister complete the transaction, and the evidence is sufficient to support a finding that Dugan transferred the proceeds in such a manner as to conceal its true owner, with full knowledge that Zakrzewski was the real party in interest and that the funds were the proceeds of the illegal drug trafficking activity. On this record, we cannot say that no reasonable juror would have found Dugan guilty beyond a reasonable doubt.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

6