# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2731/2732/3787/02-1422

_____

United States of America,       *
                               *

          Appellee,      *

                               *      Appeal from the United States

        v.                 *      District Court for the

                               *      Eastern District of Arkansas.

Randy Lee Vanhorn,          *

                               *

          Appellant.     *

_____

Submitted: January 15, 2002
Filed: July 16, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

HANSEN, Circuit Judge.

Randy Lee Vanhorn appeals the judgment and sentence entered following his jury trial on charges of mail fraud and money laundering. Vanhorn also challenges

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the author of this opinion.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

the district court's order finding that it lacked jurisdiction to address his request for modification of the restitution order. We affirm in part and reverse and remand in part.

I.

The police in Jonesboro, Arkansas, began investigating Vanhorn's activities after receiving a complaint from Robert Harrell, an acquaintance of Vanhorn, who suspected that Vanhorn was unlawfully using Harrell's name and social security number to obtain credit cards through the mail. The Jonesboro police notified the United States Postal Service of Vanhorn's allegedly fraudulent use of a post office box. The Postal Service then also began an independent investigation of Vanhorn.

On January 12, 2000, the police obtained a state search warrant to search a motel room occupied by Vanhorn for evidence of credit card fraud relating to Mr. Harrell. During this search, the police uncovered evidence relating to the Harrell credit card fraud, along with evidence of other expansive and ongoing mail fraud schemes. In particular, the police found that Vanhorn had obtained 171 credit card numbers. They also found fraudulent unemployment documents and documents indicating Vanhorn had made large deposits into an investment account with Morgan Stanley Dean Witter.

On January 13, 2000, the Postal Service obtained a federal search warrant for the post office box. This search produced additional evidence of the Harrell credit card fraud and indicated that Vanhorn was also using numerous other post office boxes under various names. Ultimately, the Postal Service's investigation revealed that Vanhorn was using post office boxes in the names of several fictitious businesses and nonexistent employees to obtain unemployment benefits through the mail. The Postal Service obtained a federal seizure warrant to secure as evidence the proceeds of the fraudulent schemes that Vanhorn had invested with Morgan Stanley Dean

2

Witter. Federal investigators subsequently discovered evidence indicating that Vanhorn had routed some of the unlawfully obtained employment benefit checks through the bank accounts of the fictitious businesses, converted the money to cash at a casino, and then deposited the proceeds into the Morgan Stanley Dean Witter account.

A federal grand jury charged Vanhorn in a 14-count superseding indictment with 11 counts of mail fraud, in violation of 18 U.S.C. § 1341 (2000), and 3 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), all based on the fraudulent unemployment benefits scheme. Vanhorn pleaded not guilty and filed a motion to suppress the fruits of the search warrant executed by the state authorities at his motel room. At the initial hearing on the motion to suppress, Vanhorn challenged only the scope of the search. After an error on the face of the warrant came to light, however, the court held a second hearing in which Vanhorn challenged the validity of the warrant on the ground that it lacked any enumeration of the particular items to be seized. The district court denied the motion to suppress, finding good faith on the part of the officer.

During trial, the government did not introduce any evidence that was seized during the execution of the state search warrant at the motel room. Vanhorn filed numerous motions for the return of the proceeds he had invested with Morgan Stanley Dean Witter, asserting that this account held only his separate cash casino winnings. Following the close of trial, Vanhorn moved to reopen the evidence to submit a recently obtained copy of a casino statement showing his winnings at the casino. The district court denied the motion, concluding that the proffered evidence was cumulative. The jury convicted Vanhorn on all 14 counts of the superseding indictment.

The district court sentenced Vanhorn to a term of 71 months' imprisonment and ordered restitution in the amount of $44,000. The court also held a revocation of

3

supervised release proceeding because Vanhorn had committed the current offenses while he was on supervised release for a 1996 conviction. Vanhorn admitted that he violated the terms of his supervised release, and the district court imposed a 10-month term of imprisonment to run consecutively to Vanhorn's new sentence. Vanhorn appeals, raising several arguments.

## II.
### A. Motion to Suppress

Vanhorn challenged the validity of the state search warrant on the ground that it failed to particularly describe the items to be seized. The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The judicially created remedy for a Fourth Amendment violation is the exclusion of evidence from the prosecutor's case in chief. See United States v. Leon, 468 U.S. 897, 906-07 (1984). When considering the denial of a motion to suppress evidence, we review the court's factual findings for clear error and review de novo the court's legal conclusions based on those facts. United States v. Pierson, 219 F.3d 803, 805 (8th Cir. 2000). We will affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made. United States v. Roby, 122 F.3d 1120, 1123 (8th Cir. 1997).

Vanhorn's challenge to the denial of his motion to suppress necessarily fails because he has not alleged that any evidence obtained through the state search was used against him at trial. Vanhorn complains that "all evidence derived from" the state search should have been suppressed as fruit of the poisonous tree (Appellant's Br. at 14), but he fails to specify any "evidence derived from" the search that was used against him at trial and, in this counseled case, it is not our duty to sift through the record to determine what evidence may have derived from this search. Miller v.

4

Citizens Sec. Group, Inc., 116 F.3d 343, 346 n.4 (8th Cir. 1997) (declining to search the record for error).

To the extent Vanhorn claims that the indictment should not have issued because it was based on evidence obtained through this search, Vanhorn fares no better. Again, Vanhorn fails to specify what evidence from the state search was used. In any event, there is no doubt the indictment would have issued independently of the state search of the motel room given the Postal Service's extensive investigation, which was the basis of the indictment. See United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997) (stating the elements of the inevitable discovery exception to the exclusionary rule). In this case, the defendant effectively received the benefit of the exclusionary rule, and thus, he has no basis on which to argue error in the denial of his motion to suppress.

## B. Sufficiency of Money Laundering Evidence

Vanhorn challenges the sufficiency of the evidence to support his convictions of money laundering. There is sufficient evidence to support a verdict if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and we will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Dugan, 238 F.3d 1041, 1043 (8th Cir. 2001) (internal quotation and alteration omitted). The essential elements of a § 1956(a)(1)(B)(i) money laundering violation are proof that the defendant conducted a financial transaction involving the proceeds of unlawful activity with knowledge that the funds were proceeds of an unlawful activity and with the intent "to conceal or disguise the nature, the location, the source, the ownership,

5

or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i); see also Dugan, 238 F.3d at 1043.

Vanhorn argues that no jury could have found proof beyond a reasonable doubt that he concealed or disguised the funds or that his savings account included proceeds of unlawful activity. He asserts that he used the money for his own purposes and in his own name and that he deposited only his gambling winnings into his investment account. From the evidence at trial, a jury could find that while Vanhorn was working as a gas station attendant and on supervised release for a prior conviction, he obtained approximately $44,000 in fraudulent unemployment benefit checks in the names of numerous fictitious employees. Upon receiving the proceeds, he deposited them into several bank accounts that he had opened in the names of fictitious businesses and transferred these funds among the accounts. He then withdrew funds totaling $12,000 from the bank accounts and redeposited them either by check, cashier's check, or as gambling winnings into his own investment account with Morgan Stanley Dean Witter.

"The purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise" either the relationship between the illegal proceeds and the defendant or the source and nature of the funds as proceeds of illegal activity. United States v. Rounsavall, 115 F.3d 561, 565 (8th Cir.) (internal quotations and alterations omitted), cert. denied, 522 U.S. 903 (1997). Even though the funds remained traceable to Vanhorn, "[his] intent to conceal the nature or source of the funds within the meaning of section 1956(a)(1)(B)(i) was evident." United States v. Nattier, 127 F.3d 655, 659 (8th Cir. 1997), cert. denied, 523 U.S. 1065 (1998). Vanhorn's acts of placing the funds in the accounts of sham businesses, withdrawing them through checks or cashier's checks as seemingly legitimate business funds, and then redepositing them into the investment account commingled with gambling proceeds, provide sufficient evidence from which a jury could find concealment within the meaning of the statute. See id.

6

We disagree with Vanhorn's assertion that this was merely a case of money spending. The facts are sufficient to demonstrate that "[t]his was not a case of a person simply using illegally obtained funds to purchase personal items." Id. (internal quotations omitted). Nor was this a case where illegal proceeds were simply deposited into the defendant's bank account. See United States v. Jolivet, 224 F.3d 902, 909-11 (8th Cir. 2000) (reversing § 1956(a)(1)(A)(i) convictions where money was deposited in defendant's account and used solely for personal expenses). On the record before us, a reasonable juror could find that the defendant routed the proceeds through sham business accounts and subsequently reinvested the proceeds into his own investment account. This evidence is sufficient to sustain the money laundering convictions.

## C. Request for Return of Funds

Vanhorn argues that the district court improperly refused to return to him the funds from the Morgan Stanley Dean Witter investment account that the government froze pursuant to an evidentiary seizure warrant. The district court concluded that the defendant was not entitled to lawful possession of the account and that he should not be given access to the account because he still owes restitution. When considering a district court's denial of a motion to return property under Rule 41(e) of the Federal Rules of Criminal Procedure, "[w]e review the district court's legal conclusions de novo and its findings of fact for clear error." United States v. Felici, 208 F.3d 667, 669-70 (8th Cir. 2000), cert. denied, 531 U.S. 1201 (2001).

The district court properly denied Vanhorn's motion for return of property. "Generally, a Rule 41(e) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." United States v. Mills, 991 F.2d 609, 612 (9th Cir. 1993) (internal quotations omitted). Although the government did not seek a final forfeiture order in this case, the funds

7

at issue (totaling approximately $10,000) are contraband. The jury concluded that Vanhorn is guilty of fraudulently obtaining approximately $44,000 in state unemployment benefits and that he laundered $12,000 of the illegal proceeds into the Morgan Stanley Dean Witter account. Accordingly, the district court did not err in concluding that Vanhorn is not entitled to lawful possession of these funds. Furthermore, there exists an outstanding restitution judgment of $9,450 from Vanhorn's 1996 conviction, and the district court ordered restitution in the amount of $44,000 in the current case. On this record, there is no error in the district court's decision to deny Vanhorn's motion for return of property.

## D. Alleged Trial Errors

After the close of trial, Vanhorn sought to reopen the evidentiary record to submit a copy of a casino statement showing that he had gambling winnings. Vanhorn asserts that the evidence is exculpatory because it demonstrates that he deposited gambling winnings in the investment account rather than illegal proceeds. The district court excluded the evidence as cumulative.

Questions concerning whether "to reopen a case after resting are entrusted to the trial court's wide discretion." United States v. Shurn, 849 F.2d 1090, 1094-95 (8th Cir. 1988). We find no abuse of discretion. The allegedly exculpatory evidence was cumulative. Vanhorn had already presented evidence that he gambled, that he received large winnings, and that he sought investment advice at Morgan Stanley Dean Witter. This evidence was undisputed. The casino statement did not refute the government's allegation that Vanhorn gambled with the illegal proceeds and commingled illegal proceeds with the gambling winnings. Nor did it refute the allegation that Vanhorn circulated the original illegal proceeds through various sham bank accounts in an attempt to conceal their illegal nature, location, or source. The district court did not abuse its wide discretion in refusing to reopen the evidentiary record.

Vanhorn also argues that the district court erred in fashioning the jury instructions because the court rejected his request for a special interrogatory to designate the amount of intended loss on each count. He cites Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), in which the Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." We hold that Apprendi is not implicated in this case so there can be no Apprendi error.

The district court sentenced Vanhorn to a term of 60 months of imprisonment on the mail fraud counts, which is the statutorily authorized maximum sentence permitted under 18 U.S.C. § 1341, regardless of the amount of loss. On the money laundering counts, the district court imposed a concurrent sentence of 71 months, which is well within the 20-year maximum sentence authorized by 18 U.S.C. § 1956(a)(1)(B), without reference to the amount of loss. Where a defendant's sentence does not exceed the statutorily authorized maximum sentence for the crime, the case does not implicate the principle announced in Apprendi. United States v. McIntosh, 236 F.3d 968, 976 (8th Cir.) (holding Apprendi is not implicated where sentence does not exceed statutory maximum sentence authorized for the offense in its simplest form), cert. denied, 532 U.S. 1022 (2001). "Until advised to the contrary by the Supreme Court . . . we conclude a sentencing judge's discretion to find facts relevant to sentencing within the statutorily permissible range has not been replaced by a requirement of jury fact-finding." United States v. Kurkowski, 281 F.3d 699, 704 (8th Cir. 2002). On this basis, we deny all of Vanhorn's claims of Apprendi error.

### E. Revocation of Supervised Release and Refusal to Appoint Substitute Counsel

Vanhorn also appeals the revocation of his supervised release relating to his 1996 conviction and the district court's refusal to appoint substitute counsel in this

case. We have reviewed the record and find both claims to be without merit. Accordingly, we affirm on these issues for the reasons stated by the district court. See 8th Cir. R. 47B.

## F. Restitution

After Vanhorn filed his appeal in this case, he requested the district court to clarify or modify its restitution order, asking the court to set a payment schedule. The district court initially granted the request but later vacated that order, concluding it had lacked jurisdiction to modify the restitution order due to Vanhorn's pending appeal. Vanhorn challenges the district court's denial for lack of jurisdiction of his motion to modify the restitution order. He asserts that the district court had jurisdiction to modify the order and asks this court to stay the collection of restitution.

Initially, we deny Vanhorn's motion to stay the collection of restitution. His assertion, however, that the district court had jurisdiction to adjudicate his motion to modify the restitution order notwithstanding the pendency of his appeal and the seven-day time limit of Fed. R. Crim. P. 35(c) has merit.

The district court's judgment of conviction and sentence in this case, dated June 22, 2001, does not set a schedule of payments for restitution while Vanhorn is incarcerated, and this is contrary to current law. 18 U.S.C. § 3664(f)(1)(B)(2) (requiring the court to specify the schedule for payment); United States v. McGlothlin, 249 F.3d 783, 784-85 (8th Cir. 2001) (holding the district court must fashion a payment schedule designating a specific percentage of the prisoner's monthly earnings to go toward his restitution obligation). Seeking a specified payment schedule, Vanhorn asked the district court to modify his restitution order, and the government did not object. On October 3, 2001, the district court modified the judgment, specifying a restitution payment schedule of $25 per quarter or 10% of Vanhorn's gross income.

10

Vanhorn filed a second request for modification, and this time the government resisted, asserting that because Vanhorn had appealed the original judgment of conviction and more than seven days had passed since the imposition of sentence, the district court lacked jurisdiction to modify the order. See Fed. R. Cr. P. 35(c) (permitting correction of sentence only within seven days after the imposition of the sentence). The district court agreed and on November 20, 2001, vacated the modification order of October 3, 2001, for lack of jurisdiction, leaving the original nonspecific restitution order in effect. Vanhorn appeals the November 20, 2001, order, arguing that a district court retains jurisdiction to modify a restitution order even where a defendant is appealing other issues in the case.

This case involves an order of mandatory restitution because the offense was committed by fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). A mandatory order of restitution is governed according to the terms of 18 U.S.C. § 3664. Id. § 3663A(d). Section 3664 specifies that "this chapter [Miscellaneous Sentencing Provisions], chapter 227 [Sentences], and Rule 32(c) of the Federal Rules of Criminal Procedure [Sentence] shall be the only rules applicable to proceedings under this section." 18 U.S.C. § 3664(c) (emphasis added). This explicit language indicates to us that Rule 35(c)'s seven-day limitation on the district court's ability to correct a sentence does not apply in this context. Additionally, § 3664 expressly permits the district court to adjust the payment schedule "as the interests of justice require." 18 U.S.C. § 3664(k). We have previously held that the notice of appeal challenging a conviction "[does] not divest the district court of jurisdiction to clarify its restitution order as additional information [is] discovered." United States v. Allen, 247 F.3d 741, 794 (8th Cir. 2001), petition for cert. filed, (U.S. Oct. 22, 2001) (No. 01-7310). We hold that the district court in this case did not lack jurisdiction to modify the restitution order despite the previously filed notice of appeal challenging Vanhorn's convictions and the passage of more than seven days since the imposition of sentence. Accordingly, we reverse the district court's order which found that it lacked jurisdiction, and we remand for further consideration of the restitution order consistent with this opinion.

## III.

We deny Vanhorn's motion for stay of collection of restitution. We reverse and remand the district court's order of November 20, 2001, in which the district court concluded that it lacked jurisdiction to consider Vanhorn's motion to modify the restitution order, and we remand this issue for further proceedings consistent with this opinion. In all other respects, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.