# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3941

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Edward Lee Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 16, 2003
Filed: August 19, 2003

_____

Before BOWMAN and BYE, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Edward Lee Williams raises five issues in this appeal of his conviction for one count of aiding and abetting the distribution of cocaine base. We affirm.

The charge against Williams arose from a controlled purchase of cocaine base on July 18, 2001. Special Agent Brugman of the Iowa Division of Narcotics Enforcement and a confidential informant, James Kimpton, arranged to buy the cocaine base from Williams's sister, Emma, at her apartment in Cedar Rapids. After

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

entering the apartment, Brugman asked Williams's sister for one-quarter ounce of cocaine base. This discussion and the ensuing conversation between Brugman, Kimpton, and Williams's sister were audio-taped by the Government. Williams's sister left and re-entered the apartment several times during the transaction. At one point, she used Brugman's cell phone to call her source for the drugs; after placing that call, she told Brugman that her brother would come inside to let her know when the source had arrived at the apartment. Shortly thereafter, Williams's sister left the apartment and returned with a plastic bag containing one-eighth of one ounce of cocaine base. A few minutes later, she met her brother in the hallway immediately outside the apartment. Brugman followed her but stopped at the apartment doorway, which was approximately eight-to-ten feet from where Williams and his sister stood. From there, Brugman saw Williams extend his arm and his sister take a small plastic bag containing 1.42 grams of cocaine base, which she then carried back to the apartment in the palm of her hand. The charge against Williams was based on this exchange. Williams never came any closer to Brugman nor did he enter the apartment.

We now address the five issues raised by Williams.

## I. Brugman's Identification of Williams

Brugman testified at trial that on the day after the controlled purchase, he viewed a copy of a prior arrest photograph of Williams and identified Williams as the person who handed the cocaine base to his sister. Trial Tr. at 92. Williams contends that Brugman's pretrial identification of Williams was overly suggestive and therefore should have been suppressed by the District Court.[2] We review de novo. United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995).

---

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

A two-part test governs the admissibility of identification evidence. First, we determine if the identification procedures were "impermissibly suggestive." Simmons v. United States, 390 U.S. 377, 384 (1968). If they were, we examine the totality of the circumstances to determine whether the suggestive procedures created "a very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384; see also Manson v. Brathwaite, 432 U.S. 98, 113 (1977) (reaffirming totality-of-circumstances standard rather than exclusionary rule). The Government concedes that the identification procedure used by Brugman was impermissibly suggestive. Br. of Appellee at 10. We therefore move to the second part of the test—the likelihood of misidentification—in which we consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson, 432 U.S. at 114. We have balanced these five factors and conclude there was very little likelihood of misidentification. Brugman viewed Williams from eight-to-ten feet away in the hallway of the apartment during daytime hours. Although Brugman saw Williams only for a moment, there is no evidence of poor lighting or an obstructed view. A twenty-year veteran of the Iowa Division of Narcotics Enforcement who is frequently involved in controlled purchases with persons whom he has never seen, Trial Tr. at 81, 150–51, Brugman surely employed his highest degree of attention throughout the controlled purchase. Although Brugman did not describe Williams immediately following the controlled purchase, he witnessed a photograph of Williams within two days of the purchase and recognized him at that time. For these reasons, we reject Williams's argument that the pretrial identification should have been suppressed.

## II. Alleged Hearsay Statements

Williams next argues that the District Court erred in failing to suppress statements made by his sister during the controlled purchase that he believes are

hearsay. The statements were taped by the Government, and the jury listened to the tape and received a copy of its transcript to follow during the playing of the tape (the jury was not allowed to keep the transcript after the playing of the tape was completed). The statements by Williams's sister were also admitted at trial through Brugman's testimony.

Hearsay is "a statement, other than one made by the declarant while testifying at . . . trial, offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and is generally inadmissible, Fed. R. Evid. 802. But a statement is not hearsay if it is offered against a party and was made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). More specifically, a statement is admissible pursuant to Rule 801(d)(2)(E) "if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). The standard of proof for these requirements is preponderance of the evidence. Id. at 1044. Williams argues that the statements made by his sister, who did not testify at trial, were offered to prove the truth of the matters she asserted. The District Court, however, ruled that her statements were not hearsay because they met the requirements of Rule 801(d)(2)(E). We review evidentiary rulings for an abuse of discretion. United States v. Alcantar, 271 F.3d 731, 739 (8th Cir. 2001), cert. denied, 535 U.S. 964 (2002).

Williams offers two arguments for why Rule 801(d)(2)(E) should not apply. We find his first argument—that "[a] sale of drugs does not constitute a conspiracy," Br. of Appellant at 15—to be frivolous. In the criminal context, a "conspiracy" is "'an agreement between at least two people'" whose "'objective was a violation of the law.'" United States v. Guerrero–Cortez, 110 F.3d 647, 651 (8th Cir.) (quoting United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996) (internal quotations

omitted)), <u>cert. denied</u>, 522 U.S. 1017 (1997). Obviously, an agreement between two persons to sell drugs in violation of federal law meets this definition.

Williams also contends that his participation in a conspiracy was not proven by independent evidence, as he believes it must be, but instead only by his sister's statements, the very statements he argues are hearsay. Contrary to Williams's assertion, the District Court relied on more than his sister's statements in concluding that he and his sister were involved in a conspiracy. In particular, the District Court considered Brugman's testimony that he saw Williams hand his sister a plastic bag containing cocaine base. The circumstances surrounding this exchange—its rapid occurrence in the back hallway of a small apartment while purchasers waited in the front of the apartment—are strong hints Williams knew his sister intended to sell the drugs rather than use them herself. <u>Cf.</u> <u>Iannelli v. United States</u>, 420 U.S. 770, 777 n.10 (1975) (explaining that agreement underlying conspiracy can "be inferred from the facts and circumstances of the case"). Taken together, the independent evidence and the statements provide proof of a conspiracy in which Williams and his sister were involved, and there is little doubt that her statements were "made during the course and in furtherance of the conspiracy"—a sale of cocaine base was ongoing, and her statements were made with the purpose of explaining the sale procedure to the purchasers. Accordingly, the District Court did not abuse its discretion by admitting the statements.

## III. Evidence of Prior Drug Conviction

Williams was convicted in 1996 in Iowa state court of delivery of cocaine base. Over Williams's objection, the District Court permitted the Government to introduce the 1996 conviction as evidence of Williams's knowledge of cocaine base and his intent to aid and abet in its distribution. Williams argues that introducing the conviction violated Rule 404(b) of the Federal Rules of Evidence. Again, our review

is for abuse of discretion.  United States v. LeCompte, 99 F.3d 274, 277 (8th Cir. 1996).[3]

Evidence of a prior crime is admissible if the prior crime is relevant to a material issue, similar in kind and close in time to the charged crime, and supported by sufficient evidence.  United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002), cert. denied, 123 S. Ct. 1766 (2003).  In addition, its probative value must not be outweighed by any improper prejudicial impact.  Id.  Evidence of a prior crime is inadmissible, however, "to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  That is, "[s]uch evidence is not admissible 'solely to prove the defendant's criminal disposition.'"  LeCompte, 99 F.3d at 277 (quoting United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995)).

Williams argues that evidence of his 1996 conviction should not have been admitted because it is not similar in kind or close in time to the crime he was charged with committing.  He explains that his 1996 conviction "appeared to be sales of small quantities for personal use rather than a sale of a larger amount for resale as the size of the July 18, 2001 sale suggested."  Br. of Appellant at 18.  Our cases, however, do not support the suppression of a prior drug conviction in the prosecution of a drug offense where the prior conviction involved drugs for personal use rather than for sale.  See, e.g., United States v. Powell, 39 F.3d 894, 896 (8th Cir. 1994).  This case is no different. The discrepancy in quantity between Williams's prior conviction and

---

[3]We note that Williams also appeals as violative of Rule 404(b) the admission of testimony by a police officer that he saw Williams at Williams's sister's apartment in April 2002.  The Government introduced this testimony to show a connection between Williams and the location of the charged offense; specifically, it supplemented the testimony by Brugman and the confidential informant, Kimpton, that placed Williams at his sister's apartment.  We believe the testimony by the officer is admissible, though it is not governed by Rule 404(b) because it is not evidence of a prior bad act, but "merely shows the full context of the charged crime."  See United States v. Carroll, 207 F.3d 465, 468 (8th Cir.), cert. denied, 531 U.S. 849 (2000).

the present prosecution does not change the prior conviction's probative value as to Williams's knowledge and intent. See United States v. Oates, 173 F.3d 651, 660 (8th Cir.), cert. denied, 528 U.S. 890 (1999). Williams also argues that the 1996 conviction is too remote to be relevant, but we do not believe the five-and-a-half years that elapsed between his prior conviction and the July 18, 2001, sale of cocaine base weakens the prior conviction's probative value. See United States v. Burkett, 821 F.2d 1306, 1309–10 (8th Cir. 1987) (approving admission of evidence of prior crime committed seven years before offense for which defendant was being tried). We find this to be particularly true concerning the prior conviction's relevance as to Williams's knowledge that he was distributing cocaine base; we believe he could recognize cocaine base with the same accuracy in 2001 as he did in 1996.

Alternatively, Williams contends that the prejudicial impact created by the introduction of the 1996 conviction substantially outweighs the conviction's probative value. The Government is correct that the conviction had significant probative value—as we just explained, it provides evidence of Williams's knowledge and intent. It was especially probative because the conviction concerned the same drug, cocaine base, that the Government charged Williams with distributing in this case. Of course, this similarity creates the prejudicial effect—the notion that Williams has a propensity to deal in cocaine base—that concerns Williams. To ensure this prejudicial effect would be minimal, the District Court instructed the jury that it was permitted to use the conviction only in considering Williams's knowledge and intent. Trial Tr. at 199–200. He told the jury, "Remember, even if you find that the Defendant may have committed a similar act in the past, this is not evidence that he committed such an act in this case. You cannot convict a person simply because you believe he may have committed similar acts in the past." Id. We believe this charge to the jury greatly decreased any likelihood of undue prejudice, see United States v. Fletcher, 322 F.3d 508, 519 (8th Cir. 2003), and the admission of the evidence of Williams's 1996 conviction was not an abuse of the District Court's discretion.

-7-

## IV. Post-Trial Motions

The District Court denied Williams's motions for a judgment of acquittal and for a new trial. He appeals both.

In considering a motion for acquittal, "we view the evidence in the light most favorable to the jury's verdict and reverse only if we conclude that *no* reasonable jury could have found guilt beyond a reasonable doubt." United States v. Barrow, 287 F.3d 733, 736 (8th Cir.), cert. denied, 123 S. Ct. 535 (2002). For this reason, "[w]e do not lightly overturn a jury verdict." Id.

Williams's argument that we should overturn his conviction is premised on what he alleges is unreliable testimony by Kimpton, the confidential informant. Kimpton's testimony at trial conflicted with a statement he made to police immediately following the controlled purchase, and he also gave incomplete testimony concerning his criminal history to the grand jury. We acknowledge these inconsistencies in Kimpton's testimony, but in considering a motion for acquittal, a court should not assess the witnesses' credibility or weigh the evidence. United States v. Hernandez, 301 F.3d 886, 889 (8th Cir. 2002). Our task is to evaluate whether the Government has met its burden of proof. In order to convict Williams of aiding and abetting the distribution of cocaine base, the Government was required to prove beyond a reasonable doubt that Williams "(1) associated [him]self with the unlawful venture; (2) participated in it as something [] he wished to bring about; (3) sought by [his] actions to make it succeed; and (4) shared the criminal intent of the principal." See id. at 890. Having reviewed the record in the light most favorable to the Government, we believe the Government has fulfilled its burden. Brugman testified to seeing Williams hand his sister the bag of cocaine base. Trial Tr. at 90. He also said that Williams's sister told him "that she would have her brother come and tell her

when her source was at the residence." Id. at 88.[4]  Further, Brugman testified that Williams's sister said that she "sent her brother around back to get the rest" of the cocaine base to be sold. Id. at 89.  Two Iowa police officers performing surveillance of the controlled purchase testified to seeing Williams outside the apartment building. Id. at 57, 61.  So did Kimpton.  Id. at 167–68.  Taken together, this evidence is meaningful proof of Williams's presence at the apartment and his association with the distribution of an illegal drug.  In addition, as we explained in the context of Williams's evidentiary challenge to his sister's statements, his delivery of cocaine base in a plastic bag in the back hallway of a small apartment building suggests that Williams knew his sister intended to sell the drugs, not use them personally. Williams's prior conviction provided further evidence of his knowledge of cocaine base and his intent to participate in the distribution of drugs.  See Ruiz-Estrada, 312 F.3d at 403.  In sum, there is sufficient evidence in the record to support the jury's verdict.  The motion for acquittal was properly denied.

The standard for a new trial is not as stringent as that for judgment of acquittal. We may not grant a defendant a new trial "unless 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'"  United States v. Espinosa, 300 F.3d 981, 983 (8th Cir. 2002) (citations omitted).  A district court's denial of a new trial motion will not be overturned unless "the court clearly abused its discretion."  Id.  Unlike in a motion for acquittal, we need not view the evidence in the light most favorable to the Government.  Id.  The new trial motion, therefore, presents the proper time for our consideration of Williams's argument that the verdict rested on Kimpton's unreliable testimony.  We agree that the inconsistencies between his testimony at trial and his statement to police after the controlled purchase leave doubts as to his credibility.  But we do not believe Kimpton's testimony weakened the strength of the Government's remaining evidence.

---

[4]According to Brugman, she identified Williams by the name "O.G.", Trial Tr. at 88, which Kimpton testified was one of Williams's nicknames, id. at 167.

Brugman's testimony and Williams's prior conviction provided the jury with all of the facts necessary to prove Williams's intent to participate, and actual participation, in aiding and abetting the sale of the cocaine base, and the jury's verdict reasonably could rest in large part on the credibility of Brugman. We are satisfied the District Court did not clearly abuse its discretion in denying Williams's new trial motion.

## V. Motion for Downward Departure

Williams moved at his sentencing for a downward departure under United States Sentencing Guidelines (U.S.S.G.) § 4A1.3 (2002) because he believed his sentence overstated his criminal record. The District Court denied the motion. Williams urges us to reconsider this decision, but the Government insists we are foreclosed from doing so because the denial of a downward departure motion is unreviewable unless the court was unaware of its authority to depart. See United States v. Lim, 235 F.3d 382, 385 (8th Cir. 2000). At sentencing, the District Court stated, "If I thought it wasn't an abuse of discretion, I'd go ahead and grant [Williams's departure] motion, but I have to follow the law, and I think that you have to look at the entire criminal history . . . . I can't in good faith say that the criminal history is overstated for purposes of a downward departure." Sentencing Tr. at 15 (Nov. 21, 2002). Williams interprets this to mean that the District Court believed it lacked the authority to grant the departure motion, while the Government reads the District Court's explanation as an acknowledgment that it could grant a departure if Williams's criminal history was less decorated with convictions. We agree with the Government. In our view, the District Court stated its belief that it understood its authority to depart downward pursuant to U.S.S.G. § 4A1.3 but that a departure would be an abuse of its discretion given Williams's criminal history. See United States v. Bieri, 21 F.3d 811, 817–18 (8th Cir. 1994), cert. denied, 513 U.S. 878 (1994); Lim, 235 F.3d at 385 (concluding that district court understood it had authority to depart downward under U.S.S.G. § 4A1.3 even though court did not state belief that it recognized its authority to depart). Because we are convinced the

-10-

District Court was aware of its authority to depart downward but elected not to do so because of Williams's extensive criminal history, we are precluded from reviewing the denial of Williams's departure motion.

## VI. <u>Conclusion</u>

For the reasons stated above, the judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.