# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2468

_____

United States of America,          *
                                      *

           Appellee,          *
            *   Appeal from the United States
    v.                    *   District Court for the
                                  *   District of Nebraska.
Bryant Anthony Welerford,   *
                                      *

          Appellant.        *

_____

Submitted:  November 18, 2003

Filed:  January 30, 2004

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Bryant Anthony Welerford (Welerford) was charged with possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (2000), and using and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Welerford moved to suppress the cocaine found in a search of his car during the traffic stop. After the district court[1] denied Welerford's motion,

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska, adopting the Report and Recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

Welerford entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Welerford now exercises that right. We affirm.

## I.    BACKGROUND

While running stationary radar on Interstate 80 around 8:24 a.m., Nebraska State Patrol Trooper Robert Pelster (Trooper Pelster) observed a speeding Pontiac. Trooper Pelster, along with his passenger, South Dakota Highway Patrol Trooper Jason Lurz (Trooper Lurz), began to follow the speeding Pontiac, which cut directly in front of another vehicle. Trooper Pelster initiated a stop of the Pontiac for speeding and making an improper pass. The stop was videotaped from Trooper Pelster's patrol car. Unfortunately, Trooper Pelster's microphone only captured intermittent statements. Trooper Pelster testified he did not know during the stop that the microphone had malfunctioned. The malfunctioning microphone lies at the heart of this appeal.

During the initial phase of the stop, Trooper Pelster observed food wrappers, trash and a pillow inside the Pontiac. Welerford was the Pontiac's sole occupant. Welerford produced a driver's license, and a one-way rental agreement for the Pontiac. Welerford told Trooper Pelster he was driving from Los Angeles, California (a source state for drugs), to Chicago, Illinois, because his cousin was trying to sell Welerford's mother's house. Trooper Pelster asked Welerford to step over to the patrol car. In the patrol car, Welerford answered Trooper Pelster's questions, and Welerford contested the reasons for the stop. After issuing Welerford a warning ticket, Trooper Pelster asked Welerford if he had ever been arrested, which Welerford denied. A background check verified Welerford's driver's license, and also indicated Welerford had a criminal history of narcotics sale and transportation, and concealed weapon offenses.

Welerford, Trooper Pelster, and Trooper Lurz then exited the patrol car. Standing in front of the patrol car, Trooper Pelster asked Welerford if he would

answer some questions. Welerford agreed, and in response to a question, denied possessing illegal drugs. Trooper Pelster and Welerford disagree as to what happened next. Even though the videotape visually captured what happened, Welerford and Trooper Pelster disagree as to what was said.

Welerford testified Trooper Pelster asked to search the vehicle, and Welerford threw his hands up and said, "no." Welerford says he then walked toward his vehicle to leave, but Trooper Pelster followed. According to Welerford, Trooper Pelster again asked to search the vehicle, motioning for Welerford to stand away from the vehicle. Welerford claims, at that time, Trooper Pelster put his hand on Welerford's opened car door to prevent Welerford from leaving. Welerford claims he threw up his hands and said, "hey, it seems like you're going to do what you want to do anyway." Welerford testified he felt very intimidated by Trooper Pelster. Welerford then walked back to the front of the patrol car and stood there while Trooper Pelster searched the vehicle's trunk.

Trooper Pelster's version of what transpired on the videotape differs from Welerford's version. Trooper Pelster testified he asked Welerford for consent to search the vehicle, and Welerford said "go ahead" or "okay," while gesturing with his hands. As the two men walked toward the vehicle, Trooper Pelster again asked Welerford for consent to search, and Welerford again gestured with his hands indicating permission. Welerford opened the door to his vehicle, at which time Trooper Pelster again asked whether Welerford consented to a search of the vehicle. Trooper Pelster said Welerford again granted permission to search the vehicle, while making the same hand gestures indicating permission. Trooper Pelster then asked Welerford to stand in front of the patrol car, and Welerford complied.

It is uncontested Welerford made no objections to the search while standing in front of the patrol car. Trooper Pelster took the keys from the ignition and opened the

-3-

trunk, where he discovered cocaine. Based on the cocaine discovery, Trooper Pelster arrested Welerford.

The magistrate judge found Welerford consented to a search of his vehicle, and Welerford's consent was voluntary. Recognizing the evidence conflicted, the magistrate judge found the evidence "preponderates barely in favor of the government." The magistrate judge directly confronted the ambiguous, non-verbal communication depicted on the videotape. Comparing Welerford's and Trooper Pelster's versions of events with the actions captured on the videotape, the magistrate judge found Trooper Pelster's testimony "provided a credible explanation of the statements [Welerford] made and how they coincided with [Welerford]'s arm movements and gestures depicted on the videotape." The magistrate judge also recognized Welerford had a "significant motive" to testify he did not consent to the search, while Trooper Pelster believed, at the time, every word and action were being videotaped and recorded. Thus, the magistrate judge found "a reasonable officer would have interpreted [Welerford]'s words and gestures as a valid consent to search the vehicle."

The magistrate judge then confronted whether Welerford's consent was voluntary, and found it was. In finding Welerford voluntarily consented to the search, the magistrate judge relied on the following findings: Welerford was a thirty-three year old who was familiar with the criminal justice system, based on several felony arrests, including drugs found in a previous vehicle search; Welerford speaks English, is a high school graduate, and has one and one-half years of junior college education; Welerford has "the intellectual ability or maturity to understand Trooper Pelster's questions [and] withhold his consent"; Welerford never objected to the search as it was being conducted; the roadside environment where the consent took place was not coercive or intimidating; Trooper Pelster's conduct, "while at times intimidating," did not overbear Welerford's "will in any respect"; in the patrol car, when the conversations were clearly recorded, Welerford showed a willingness to challenge

Trooper Pelster on the reasons for the stop. Finding Welerford consented to the search and his consent was voluntary, the magistrate judge recommended the district court deny Welerford's motion to suppress. The district court conducted a de novo review of the magistrate judge's Report and Recommendation, adopted it, and denied Welerford's motion to suppress.

Welerford appeals, asking this court to conduct an "exacting examination of the videotape" in context with the testimony of Welerford, Trooper Pelster, and Trooper Lurz.[2] Welerford contends such an exercise should convince us Welerford did not consent to the search of his vehicle, but only acquiesced to Trooper Pelster's show of authority. The government contends the district court's determination Welerford voluntarily consented to the search was not clearly erroneous.

## II.    DISCUSSION
### A.    Standard of Review

We review the district court's conclusions of law de novo and its factual findings for clear error. United States v. Tirado, 313 F.3d 437, 439 (8th Cir. 2002). We review the district court's finding that Welerford consented to the search for clear error. Id. We will affirm the district court's order denying Welerford's motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with

---

[2]For the most part, Trooper Lurz's testimony supports Trooper Pelster's testimony. Trooper Lurz, who was simply observing without actively participating in the stop, the questioning, or the search, testified he heard Trooper Pelster twice ask Welerford for consent to search the vehicle, and Welerford twice consented to the search. Welerford contends Trooper Lurz's testimony conflicts with Trooper Pelster's testimony to such a degree as to call into question both troopers' testimony. We have reviewed the suppression hearing transcript, as well as the videotape, and disagree.

a firm and definite conviction that a mistake has been made." United States v. Vanhorn, 296 F.3d 713, 717 (8th Cir. 2002), cert. denied, 537 U.S. 1167 (2003).

### B.    Consent to Search

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; see United States v. Ameling, 328 F.3d 443, 447 (8th Cir.), cert. denied, 124 S. Ct. 422 (2003) (Fourth Amendment applies to the states through the Fourteenth Amendment).  "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." United States v. White, 42 F.3d 457, 459 (8th Cir. 1994).  The district court determined Welerford consented to the search and the consent was voluntary.

The first question we must ask is whether Welerford consented to a search of his vehicle.  "The precise question is not whether [Welerford] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).  Our review of the videotape and the suppression hearing transcript does not lead to a strong conviction that Welerford did–or did not–consent to the search.  Welerford's hand gestures and demeanor, without reviewing any testimony, are inconclusive.  Thus, we must review the videotape in light of the testimony provided by Trooper Pelster, Trooper Lurz, and Welerford.  This review is limited, because a consent determination must necessarily involve judging the credibility of witnesses, a task generally left to the district court.  The Supreme Court has stated that, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985); see United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995).  Because the district court's decision to credit the testimony of the troopers was reasonable, and

no extrinsic evidence contradicts the troopers' testimony, we conclude the district court's determination that Welerford consented to the search was not clearly erroneous.

We next confront the district court's determination that Welerford's consent was voluntary, reviewing whether this determination was clearly erroneous. Jones, 254 F.3d at 696. In deciding this question, we must consider the following factors:

> personal characteristics of the defendant, such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent.

Id.; see United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990) (compiling relevant characteristics). We earlier listed the findings on which the magistrate judge and the district court relied in finding Welerford's consent was voluntary. We see little reason to expound on how the factors listed above support the district court's finding of voluntary consent. Suffice it to say, the district court faithfully followed our precedent in determining Welerford's consent was voluntary. Our review of the videotape and the suppression hearing transcript convinces us the district court's determination that Welerford voluntarily consented to the search was not clearly erroneous.

This case boils down to our standard of review and the deference due the district court's factual findings. Cf. Anderson, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the [district court]'s choice between them cannot be clearly erroneous."). Because the district court's suppression decision is supported by substantial evidence, is not based on an erroneous view of the

applicable law, and we are not left with a firm and definite conviction a mistake has been made, we must affirm the denial of Welerford's suppression motion.

## III.   CONCLUSION

The district court was confronted with a close issue on whether Welerford voluntarily consented to the search of his vehicle. We are confronted with the same close issue on appeal, but are guided by a deferential standard of review. Concluding the district court's determination that Welerford voluntarily consented to the search of his vehicle was not clearly erroneous, we affirm the district court's order denying Welerford's motion to suppress.

_____