# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4045

_____

United States of America,        *
                                  *

         Plaintiff–Appellee,     *
                                  *      Appeal from the United States

      v.                        *      District Court for the
                                  *      Western District of Missouri

Timothy W. Hines,         *
                                  *           [PUBLISHED]

        Defendant–Appellant.   *

_____

Submitted: September 16, 2004
Filed: November 1, 2004

_____

Before COLLOTON, HEANEY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Timothy W. Hines was convicted of conspiracy to manufacture methamphetamine in excess of 50 grams (Count One) and possession of pseudoephedrine with the intent to manufacture a controlled substance (Count Two). See 21 U.S.C. §§ 841 and 846 (2000). Because of his prior drug conviction, Hines was sentenced to a mandatory statutory sentence of life in prison on Count One and a concurrent sentence of 240 months in prison on Count Two. On appeal, Hines

argues that the district court[1] erred when it denied his pretrial motions to suppress evidence, statements, and a pre-trial identification. After careful review, we affirm the judgment of the district court.

On May 9, 2001, William Cummins, an employee of a Walgreens pharmacy in Independence, Missouri, called the police. Mr. Cummins reported that a particular customer had been in the store twice that day, each time purchasing ten boxes of cold medicine containing pseudoephedrine, a compound used in the illicit manufacture of methamphetamine. Mr. Cummins also reported that he had seen the customer in the store on previous occasions making similar purchases. He described the customer as a heavyset, balding white man, wearing an artificial leg with a Harley Davidson emblem on it. From the description, Detective Bill Sweeney suspected Hines, who had been named numerous times in other narcotics investigations as someone involved in the manufacture of methamphetamine. Detective Sweeney interviewed Mr. Cummins at Walgreens and showed him a single photograph of Hines, whom Mr. Cummins immediately identified as the person who had purchased the cold medicine. Mr. Cummins also gave a description of and the license plate number for the vehicle that the customer had been driving. The vehicle was registered to Timothy Hines of 812 N. Woodland Road, Independence, Missouri.

On June 12, 2001, officers from the Kansas City Metro Methamphetamine Task Force and the Independence, Missouri, Police Department Drug Enforcement Unit went to 812 N. Woodland. Hines shared the residence with 82-year-old Freda Brummet, who owned the home. Hines did work on the property in exchange for a room in the basement. Ms. Brummet signed a consent to search form giving the officers permission to search the residence, listed on the form as "a single family

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, Chief Magistrate Judge, United States District Court for the Western District of Missouri.

dwelling and one attached single garage/outbuilding." In fact, the garage was not attached to the house.

Not long after the officers arrived, they seized a filled syringe from Hines's shirt pocket and placed Hines under arrest. Hines was given a written advisory of his rights, pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), which he initialed. The officers then questioned Hines, and Hines made several statements. Upon searching the house and the garage, the officers found and seized numerous items associated with the manufacture of methamphetamine.

On August 23, 2001, Detective Steve Cook, of the Jackson County Drug Task Force, presented Mr. Cummins (the Independence, Missouri, Walgreens employee) with a six-person photo lineup. Mr. Cummins again identified Hines's picture and described Hines as a white male wearing a prosthetic leg with a Harley Davidson emblem on it.

Hines filed a motion to suppress statements, evidence, and the one-person photo identification that took place on May 9, 2001. Because the government indicated that it was not going to use the one-person photo identification at trial, the issue on the motion became whether the May 9, 2001, procedure was so suggestive as to taint any later identification. The magistrate judge held a hearing and filed a report recommending that the district court deny all of Hines's motions.[2] The district court adopted the magistrate judge's report and recommendation.

We first consider whether the one-person photo lineup presented to Mr. Cummins was so unduly suggestive as to give rise to a very substantial likelihood of irreparable misidentification that tainted the later photo identification on August 23,

---

[2]Ms. Brummet did not testify because she passed away shortly before the hearing.

2001, and the in-court identification by Mr. Cummins. Because this claim implicates a defendant's constitutional right to procedural due process, we review de novo. United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003); United States v. Davis, 103 F.3d 660, 669 (8th Cir. 1996).

In this case, we assume, as did the district court, that the first identification procedure used was impermissibly suggestive. Thus, we go on to "examine the totality of the circumstances to determine whether the suggestive procedure[] created 'a very substantial likelihood of irreparable misidentification.'" Williams, 340 F.3d at 567 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). We consider "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" Williams, 340 F.3d at 567 (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). As the district court observed, the facts are undisputed that Mr. Cummins saw Hines in the store twice on the day that the first identification was made; Mr. Cummins remembered seeing Hines in the store previously; he was able to give the police a reliable and distinct description of Hines; and he was able to provide the police with a description of and a license plate number for Hines's vehicle. We agree with the magistrate judge and the district court that, even assuming that the first identification procedure was impermissibly suggestive, the totality of the circumstances indicate that it did not create a substantial likelihood of irreparable misidentification that tainted any later identification. We hold that the district court did not err in denying the motion to suppress based upon the one-photo identification procedure used on May 9, 2001.

We next consider Hines's argument that the search violated the Fourth Amendment because the officers did not obtain valid consent to search the 812 N. Woodland residence. We will affirm a district court's order denying a defendant's

motion to suppress "'unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" United States v. Welerford, 356 F.3d 932, 935 (8th Cir. 2004) (quoting United States v. Vanhorn, 296 F.3d 713, 717 (8th Cir. 2002), cert. denied, 537 U.S. 1167 (2003)). We review the district court's factual findings for clear error and review de novo the ultimate question of whether there was a Fourth Amendment violation. United States v. White, 356 F.3d 865, 868 (8th Cir. 2004). We hold that the officers obtained valid consent to search and that neither a warrant nor exigent circumstances were necessary. It is undisputed that the officers obtained the signed consent of Ms. Brummet, the owner and a common occupant of the property, to search the residence. "The Fourth Amendment's general prohibition against warrantless searches does not apply when officers obtain voluntary consent from the person whose property is searched or from a third party with common authority over the property." United States v. Esparza, 162 F.3d 978, 980 (8th Cir. 1998) (citing Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)).


Hines argues that even if Ms. Brummet did consent, her consent was not voluntary. "The voluntariness of a person's consent to search is a question of fact that we review under the clearly erroneous standard." United States v. Carrate, 122 F.3d 666, 670 (8th Cir. 1997). The district court's finding that Ms. Brummet's consent was voluntary was not clearly erroneous. The court weighed the hearsay testimony of the defense counsel's investigator (who testified that Ms. Brummet had told him shortly before her death that she felt that she had been coerced into signing the consent form) against the direct testimony of the officers on the scene (that Ms. Brummet had voluntarily signed the consent form, had not been coerced or threatened, and that she never indicated that she did not understand her right to refuse consent), and credited the police officers' recountings of the facts. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not

contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Welerford, 356 F.3d at 935-36 (internal quotations omitted); see also United States v. Dupree, 202 F.3d 1046, 1049 (8th Cir. 2000).

Hines also argues that the search exceeded the scope of the consent because the consent form referred to an attached garage, while the residence had only an unattached garage. We disagree. "The standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the individual?" United States v. Adams, 346 F.3d 1165, 1171 (8th Cir. 2003). Under this standard, the fact that the garage was not, in fact, attached does not invalidate the consent. The residence had only one garage, and it is thus objectively reasonable to assume that the parties understood the consent form to refer to the only garage on the property. Likewise, we reject Hines's argument that Ms. Brummet did not have the authority to consent to a search of the garage. The district court clearly adopted the magistrate judge's finding that Ms. Brummet had mutual use of and joint access to the garage. We will not disturb the district court's factual finding absent clear error, United States v. Hyatt, 207 F.3d 1036, 1038 (8th Cir. 2000), and we find no clear error here, especially as Hines admitted at the hearing that Ms. Brummet had the right to enter the garage when and if she chose.

Finally, we reject Hines's argument that the district court erred in denying his motion to suppress statements because the arresting officers failed to properly advise him of his Miranda rights before questioning him. See United States v. Jones, 275 F.3d 673, 678-79 (8th Cir. 2001) (standard of review). At the suppression hearing, the testimony indicated that Hines had read and initialed a written Miranda warning, that the officers had also read the Miranda warning aloud, and that Hines did not say anything to the officers to indicate that he did not understand his rights. The district court determined that Hines was properly advised of his Miranda rights and that he waived those rights intelligently and voluntarily. As it appears that "[t]here is nothing

in the record before this Court to call into question the credibility determination made by the district court," <u>Jones</u>, 275 F.3d at 679, we affirm the district court's order denying the motion to suppress Hines's statements.

For the reasons stated, we affirm the judgment of the district court.

_____