# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2918

_____

United States of America,

        Appellee,

v.

Andrew Sonny Jones, also known as
A.J. Jones,

        Appellant.

\* \
\* \
\* \
\* \
\* Appeal from the United States \
\* District Court for the District \
\* of Minnesota. \
\* \
\* \
\* \
\*

_____

Submitted: April 17, 2008
Filed: July 30, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Andrew Sonny Jones was charged with one count of bank robbery, a violation of 18 U.S.C. § 2113(a). After unsuccessfully moving to suppress two eyewitness identifications and evidence seized as a result of his warrantless arrest, Jones pled guilty, reserving the right to pursue those issues on appeal. The district court[1] sentenced Jones to 151 months of incarceration. Jones now appeals the district court's denial of his motions to suppress. We affirm.

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

I.    Background

At approximately 2:30 p.m. on August 9, 2006, a man entered the Highland Bank in downtown Minneapolis and approached the only teller at the counter, Mai Yang. The man demanded money from Yang, informing her that he was armed with a sawed-off shotgun. Yang gave the man money, and the man departed.

Another teller, Sandy Xiong, was working away from the front counter and saw the man interacting with Yang. Xiong was not aware that the man was robbing the bank. From her vantage point, Xiong was able to view the man from the waist up.

Yang called 911 as soon as the man left. She told the 911 operator that the robber was a black man in his mid-thirties, about five feet five inches tall, with a medium to heavy build. She described his attire, noting he was wearing dark jeans, a black tee shirt, white tennis shoes, and a black New York Yankees baseball cap. She mentioned the robber was carrying a medium-sized cardboard box. Yang told the operator which way the man headed as he left the bank.

Police dispatchers broadcast the description of the Highland Bank robber to police officers in downtown Minneapolis. Private security services in the downtown area received the broadcast, as well. After the broadcast, a number of private security guards reported seeing a man matching the description heading northbound in the Minneapolis skyway system. One guard noted the man was no longer wearing a hat, was carrying a backpack, and appeared nervous. Another guard added the suspect was now carrying a soft drink bottle, along with a black backpack. Police dispatchers also broadcast this information. Based on this updated information, Officer John Sheneman of the Minneapolis Police Department entered the skyway system and began looking for the suspect.

Inside the skyway system, a security guard at the Quest Building stopped Officer Sheneman and informed him that "the robber" had just exited to the street via a nearby escalator. The guard and Officer Sheneman followed the path taken by the suspect, and the guard pointed out the man to Officer Sheneman when they reached the street level. The man matched the combined description of the suspect—he fit the original physical description, was not wearing a hat, and was carrying a backpack and a soft drink bottle.

After visually identifying the suspect, Officer Sheneman called in his location and updated the command center. It was just after 3:00 p.m. Officer Sheneman began to follow the suspect. As he was walking, the robbery suspect turned back, looked at Officer Sheneman, and then abruptly began jaywalking across the street. Before the suspect was able to cross traffic, Officer Sheneman unholstered his firearm and ordered the man to stop.

Officer Sheneman ordered the man to return to the sidewalk, and the suspect complied. Other officers quickly arrived at the scene and the suspect, later identified as Jones, was handcuffed and placed in a squad car. After Jones was secured, Officer Sheneman looked inside the backpack Jones had been carrying. Inside the backpack Officer Sheneman saw a black Chicago White Sox baseball cap, bundles of cash, and bank papers.

Officers took Jones to Highland Bank, which was less than a mile away from where Jones was apprehended. At the bank, Jones was ordered to stand in front of the bank facing the bank's mirrored windows. Jones was still in handcuffs and was surrounded by law enforcement officers. From inside the bank, both Yang and Xiong identified Jones as the man who had robbed the bank less than one hour earlier. Neither Yang nor Jones had any doubts as to Jones's identification.

Jones was indicted for bank robbery under 18 U.S.C. § 2113(a). Subsequently, Jones filed motions to suppress the evidence seized from his backpack, as well as the eyewitness identifications by Yang and Xiong. A magistrate judge[2] held a hearing on Jones's motions and recommended the district court deny Jones's motions. After conducting de novo review of the motions, the district court adopted the magistrate judge's recommendation. Jones entered a conditional plea of guilty, was sentenced, and filed this appeal.

## II.    Discussion

We now consider the district court's denial of Jones's motions to suppress. "In the context of suppression motions, we review the district court's factual findings for clear error and its legal determinations de novo." United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003).

### A.    Arrest and Search

Jones contends that he was unlawfully arrested without probable cause and that, therefore, the evidence seized in the search incident to his arrest should have been suppressed. We conclude that his arrest had sufficient support, making evidence obtained in the search incident to his arrest admissible.

The Fourth Amendment protects, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

---

[2] The Honorable Jeanne J. Graham, United States Magistrate Judge for the District of Minnesota.

-4-

Probable cause sufficient to make a warrantless arrest exists when "the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007). A "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity" is sufficient. Id. at 756 (internal quotation omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation omitted).

In this case, the victim teller gave a description of the physical appearance and attire of the bank robber to the police immediately after the robber left the bank. The description included the suspect's height, race, clothing, and physical build. The teller also told the police the direction the robber went after leaving the bank. This information was conveyed to police and security personnel in the area surrounding the bank in a timely manner. Upon hearing the broadcast, local security personnel provided additional details about an individual matching the description of the bank robber. Very little time had passed between the robbery and these new sightings, which occurred in the immediate vicinity of the bank. Based upon the security personnel's sightings, the police updated their description of the suspect, noting he had removed his hat, was carrying a backpack, and was carrying a soft drink bottle. With this information, Officer Sheneman encountered Jones less than one mile from the bank and within thirty minutes of the robbery. Jones matched the description's height, race, physical build, and clothing details. He also fit the updated characteristics provided by the security personnel near the bank: he was carrying a backpack and a soft drink bottle and not wearing a hat. As Jones was walking along the street, he turned and looked behind him. When he saw Officer Sheneman, he abruptly began jaywalking across the street.

These facts and circumstances provided probable cause to arrest Jones for bank robbery. A reasonable officer knowing of the location and time of the robbery, the direction the suspect traveled after the robbery, and the suspect's updated description would have cause to conclude there was a "substantial chance" Jones had recently committed a criminal act. Torres-Lona, 491 F.3d at 756 (internal quotation omitted); see also United States v. Oakley, 153 F.3d 696, 697-98 (8th Cir. 1998) (affirming probable cause to arrest a suspect for bank robbery when the defendant, who matched an updated description, was located less than an hour after the bank robbery and within 12 blocks of the bank). Officer Sheneman had the additional benefit of observing Jones's quick change in direction after he saw an officer following him. It is a reasonable inference to conclude that Jones's sudden jaywalking was an attempt to elude Officer Sheneman. Inferences may be relied upon when determining probable cause. United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006) (per curiam). Evasive behavior, while not alone dispositive, is another fact supporting probable cause. See United States v. Slipka, 735 F.2d 1064, 1066 (8th Cir. 1984) (affirming probable cause to arrest a suspect for bank robbery when he matched the description of the robber and fled when he saw a law enforcement officer); cf. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (noting that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion").

Because Jones's warrantless arrest was supported by probable cause, Jones's motion to suppress the evidence seized incident to his arrest was properly denied. See Oakley, 153 F.3d at 698 (holding search of backpack was lawful search incident to arrest when probable cause existed for defendant's arrest).

B.     Eyewitness Identifications

Jones appeals the district court's denial of his motion to suppress the eyewitness identifications by the bank tellers. He alleges the show-up identification violated his procedural due process rights because the procedure used was unduly suggestive and

unreliable.  We review this constitutional claim de novo.  United States v. Hines, 387 F.3d 690, 693 (8th Cir. 2004).

"A crime victim's identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and the suspect that is both impermissibly suggestive *and* unreliable."  United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006) (internal quotation omitted).  We assume, without deciding, that the procedures in this case were unduly suggestive, and therefore turn our attention to whether the  identifications were unreliable.  See Hines, 387 F.3d at 694 (assuming that an identification procedure was impermissibly suggestive and analyzing only whether the identification was unreliable).  "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification."  Martinez, 462 F.3d at 910 (internal quotation omitted).  The relevant circumstances include "'the opportunity of the witness to view the ciminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the ciminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.'"  United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

Based on the totality of the circumstances, Hines, 387 F.3d at 694, there is very little likelihood of misidentification by Yang and Xiong.  Both of the bank tellers in Highland Bank during the robbery had the opportunity to plainly see Jones.  Yang interacted directly with Jones when he demanded money, and she watched him leave the bank.  Her exposure to him was sufficient to provide law enforcement with an accurate description of his physical appearance, including his height, race, approximate age, clothing, and physical build.  Xiong also saw Jones, though, at the time, she only regarded him as a bank customer and not a robber.  From her vantage point, Xiong was able to view Jones from the waist up.  There were no other people in the bank at the time of the robbery to distract either of the tellers.  Both Yang and Xiong were confident in their identification of Jones, which occurred less than an hour

after the crime. Under these circumstances, the district court did not err in denying Jones's motion to suppress the identifications as violative of his procedural due process rights. See Martinez, 462 F.3d at 911 (concluding that a victim teller's identification of a bank robber was reliable considering "the teller's opportunity to clearly observe the robber, her direct dealing with him at the time of the offense, her prior description of the robber, the certainty of his identification, and the short time between the robbery and his identification" (quotation and alteration omitted)).

III.    Conclusion

For the reasons stated above, we affirm the judgment of the district court.

_____