# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2675

_____

United States of America

*Plaintiff - Appellee*

v.

William Hickman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 18, 2014
Filed: August 22, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted William Hickman of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. He was also charged with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), but the jury was unable to reach a verdict, and the charge was subsequently dismissed. Seeking reversal of his conspiracy conviction, Hickman appeals two evidentiary

rulings by the court[1] and contends there was insufficient evidence to support the verdict.[2]  With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

On the night of April 27, 2011, Shernetta Robinson was working on her computer at the home she shared with her boyfriend, David Tidwell, when William Hickman came to her bedroom door.  Robinson had never met Hickman before, but she had seen his car at the house on previous occasions.  Apparently, Hickman had been at the home with Tidwell that night: Hickman told Robinson that Tidwell left the house some time ago, had not yet returned, and was not answering his phone.  Robinson and Hickman began looking for Tidwell in and around the house and continued trying to call him.  After a time, they found David Tidwell's body lying at the side of the house.[3]

Instead of calling for assistance, Hickman immediately said to Robinson: "You gotta clean up and get the drugs out of the house."  At that point, the two of them returned inside and packed into a cooler almost two kilograms of cocaine that were

---

[1]The Honorable D. P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

[2]In a pro se supplemental brief, Hickman raises three claims related to his sentence.  We generally do not accept pro se briefs when an appellant is represented by counsel.  United States v. McIntosh, 492 F.3d 956, 961 n.2 (8th Cir. 2007).  We note, however, that Hickman's arguments concerning the use of prior convictions to enhance his sentence are controlled by Almendarez-Torres v. United States, 523 U.S. 224 (1998), which permits such use, see id. at 239–47, and remains unaffected by Alleyne v. United States, 133 S. Ct. 2151, 2160 n.1 (2013).  His argument regarding Descamps v. United States, 133 S. Ct. 2276 (2013), is inapposite.

[3]The circumstances of Tidwell's death are not at issue here.

on the kitchen counter. Hickman left with the drugs.[4]  Only then did Robinson call 9-1-1, saying she could not find her boyfriend.  She did not tell authorities that she and Hickman had found his body outside the house.  Later that night, Robinson spoke with Tidwell's nephew, Antonio Adams.  She told Adams that Hickman "had gotten the drugs out of the house."

A week later, Detective Jay Massiet of the Pulaski County Sheriff's Office interviewed Robinson.  During that interview, Robinson told officers for the first time about the drugs at the house on the night of Tidwell's death.[5]  She also identified Hickman as the man who introduced himself to her as "Scotty" and who left the house with the cocaine.  She provided additional details in two subsequent interviews and identified Hickman again when she testified against him at trial.

Also at trial, the government introduced phone records that linked Hickman and Adams, showing they spoke repeatedly over the day and a half after Tidwell's death.  An excerpt of Adams' grand jury testimony that was admitted into evidence also corroborated Robinson's testimony that she had told him Hickman removed the cocaine from her house.  Another witness, Quincy Bruce, testified that Tidwell was involved in distributing cocaine and "had a shipment of cocaine in" on the night of his death.  Bruce, too, referred to Hickman as "Scotty" and testified that "[a]s far as I know, he's a worker" in Tidwell's drug organization.  Detective Massiet testified that the police found no drugs at the Robinson/Tidwell home when they arrived to investigate Tidwell's death.

David Tidwell's estranged wife, Lois Neal Tidwell, also testified at trial.  She last saw Tidwell at dinner the night before his death, during which he received a

---

[4]This conduct formed the basis for the charge of obstruction of justice.

[5]Shernetta Robinson was later charged with the same offenses as Hickman. She ultimately pled guilty to one count of misprision of a felony.

phone call informing him that a shipment of cocaine had arrived. She said she believed Hickman, whom she knew as "Scotty," and Tidwell "were fairly close"; the two "grew up together." Lois Neal Tidwell also testified about Hickman's and Tidwell's previous involvement in drug trafficking. When Tidwell was arrested in 2006, he called Lois and instructed her on how to safeguard his cocaine. She testified she was later told "to give [the cocaine] to Scotty and Scotty was the only person I was supposed to deal with as far as the drugs were concerned." She further stated that over a one- to two-month period, she gave Hickman kilogram quantities of drugs, per Tidwell's instructions.

Hickman appeals the district court's rulings that admitted Robinson's identifications of him and evidence of his prior involvement in cocaine dealing. He also contends there was insufficient evidence to support the jury's verdict. We address each argument in turn.

## II. Discussion

## A. Identification

The district court admitted Robinson's identification of Hickman at her initial police interview and again at trial, finding these statements of identification were admissible pursuant to Fed. R. Evid. 801(d)(1)(C) and were not based on a police procedure that was impermissibly suggestive. However, Hickman contends that Robinson's identification of him at her first police interview was based on an identification procedure that "was so unduly suggestive as to give rise to a very substantial likelihood of irreparable misidentification that tainted" both that identification and her later identification of him at trial. United States v. Hines, 387 F.3d 690, 693 (8th Cir. 2004). "Because this claim implicates a defendant's constitutional right to procedural due process, we review de novo." Id.

-4-

We acknowledge that identifying a defendant from one photo would have a greater tendency to be impermissibly suggestive than would a photo line-up involving several people. See, e.g., id. at 694 (assuming, as did the district court, that a one-person photo lineup was impermissibly suggestive); United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (government conceded showing only a prior arrest photograph for identification was impermissibly suggestive). During Robinson's first interview with Detective Massiet on May 5, 2011, she said there was an unfamiliar man in her home on the night of April 27; he may have identified himself as "Scotty" or "Scotty Rock," but he stuttered and was difficult to understand. Later in the same conversation, Detective Massiet said to Robinson, "You told some of your family members that this 'Scotty' was a 'Willie Hickman,'" then showed her a photograph of Hickman and asked whom it depicted. She quickly responded that it was Scotty, the man who had removed the cocaine from her house on the night in question. Robinson thus knew who had been in her house that night by an alias Hickman does not dispute.

Even if Robinson's initial police interview involved "an identification procedure that is both suggestive and unnecessary," "suppression of the resulting identification is not the inevitable consequence." Perry v. New Hampshire, 132 S. Ct. 716, 724–25 (2012). Instead, we evaluate "whether improper police conduct created a 'substantial likelihood of misidentification,'" id. (quoting Neil v. Biggers, 409 U.S. 188, 201 (1972)), that tainted Robinson's identifications of Hickman both at this interview and, later, at his trial. See Hines, 387 F.3d at 693–94. In making this determination, "we consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" Williams, 340 F.3d at 567 (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

Hickman contends the only time we may consider Robinson to have seen him was when he stood outside her bedroom, noting she told Detective Massiet that she had not clearly observed the figure in her doorway. In particular, Hickman argues we may not consider the time they spent in the kitchen together while cleaning up the cocaine: since the jury did not convict him of obstruction of justice, we may not credit Robinson's description of the conduct that led to that charge. However, "[a] host of reasons—sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room." Yeager v. United States, 557 U.S. 110, 121 (2009). The jury's failure to reach agreement on the obstruction of justice count does not bar us from considering evidence regarding its underlying facts when determining whether Robinson had sufficient opportunity to observe Hickman for purposes of later identifying him.

Moreover, the remaining factors point toward a reliable identification of Hickman. Robinson described in detail their joint efforts to get rid of the cocaine from the kitchen and the events of the evening more generally. She had previously identified Hickman by a specific alias and was certain of his identity once she saw his photograph. Finally, Robinson met with Detective Massiet and identified Hickman roughly one week after the night of Tidwell's death. We find the admission of Robinson's identifications during the police interview and at trial did not violate Hickman's right to due process. See Hines, 387 F.3d at 694 (since witness' initial identification of defendant to police "did not create a substantial likelihood of irreparable misidentification that tainted any later identification," district court properly admitted both a subsequent photo identification and an in-court identification).

## B. Evidence of Prior Acts

Hickman contends the testimony of Lois Neal Tidwell regarding his prior involvement in cocaine distribution was improperly admitted pursuant to Fed. R. Evid. 404(b). The district court found this testimony to be "relevant to Mr. Hickman's motive and intent." In order to be admissible, evidence of prior acts must:

> (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value.

United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009) (quotation omitted). We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. Id. at 1065.

Hickman first argues the testimony concerned acts too remote in time to the crime charged. Lois Neal Tidwell described drug transactions from 2006; Hickman was indicted for acts committed in 2011, then went to trial in 2013. Though we acknowledge this is a significant gap in time, it is not so long, particularly given the similarity between the prior drug transactions and the charged conspiracy, that admission of this evidence was improper. We have found that where the defendant argued there was no conspiracy to distribute drugs, and he was merely present and uninvolved in the drug transactions described at his trial, an eleven-year gap between a prior drug conspiracy conviction and a charge for the same crime did not defeat admissibility under Rule 404(b). See United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009). Moreover, other witnesses acquainted with Tidwell testified that there was no break in Hickman's involvement with Tidwell's drug organization after Tidwell was released from prison, and the same people were implicated in both the 404(b) prior acts and the charged conspiracy.

Hickman also contends this evidence was substantially more prejudicial than probative. However, his defense was that no credible testimony or physical evidence connected him to the Robinson/Tidwell house on the night in question. Having denied his involvement entirely, evidence that he had previously been involved in cocaine distribution—indeed, with the very same person—was directly relevant to both his primary defense and the crime charged. See United States v. Gaddy, 532 F.3d 783, 789–90 (8th Cir. 2008). Though Lois Neal Tidwell testified to more details than "the fact of conviction, date, and drug type," Trogdon, 575 F.3d at 766, the court first gave a thorough limiting instruction, then asked the jurors to confirm by raising their hands that they had understood the instruction. The district court did not abuse its discretion in admitting Lois Neal Tidwell's testimony.

## C. Sufficiency of the Evidence

Finally, Hickman contends there was insufficient evidence presented for the jury to convict him of conspiracy to possess cocaine with intent to distribute. "We review de novo the sufficiency of the evidence, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences. The verdict will not be disturbed unless no reasonable construction of the evidence will support the jury's verdict." United States v. Wintermute, 443 F.3d 993, 1003 (8th Cir. 2006) (quotation omitted). To convict Hickman, the jury had to find beyond a reasonable doubt that (1) "on or before April 27, 2011, two or more persons reached an agreement or came to an understanding to possess with intent to distribute a controlled substance, cocaine"; (2) "Hickman voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect"; and (3) "at the time Hickman joined in the agreement or understanding, he knew the purpose of the agreement or understanding." See United States v. Bradley, 643 F.3d 1121, 1124 (8th Cir. 2011).

-8-

Hickman argues Robinson was the only witness to his presence at her house on the night of April 27, and her testimony should be discounted. As above, he disputes whether she could accurately identify him. He also raises questions regarding both her conduct that night and her subsequent account to police, calling her credibility into doubt. However, Hickman's arguments concerning Robinson's testimony "are properly characterized as attacks on the jury's credibility determinations, which are virtually unassailable on appeal." Id. at 1125 (quotation omitted).

Hickman contends the only other person to link him to Robinson's home that night was Antonio Adams, whose trial testimony was inconsistent with his grand jury testimony and with his police interview. In particular, Adams testified before the grand jury that he had spoken with Hickman on the phone that night, and Hickman told him he had taken something out of the house: "I don't know if it was money or drugs or, you know, what it was." At trial, Adams denied having made these statements. These inconsistencies were revealed to the jury when the government introduced into evidence the relevant portions of Adams' grand jury testimony during his direct examination. Hickman then questioned him further on cross-examination. Again, we cannot review the jury's credibility determination; moreover, at this stage we "resolv[e] all evidentiary conflicts in favor of the government," Wintermute, 443 F.3d at 1003, and Detective Massiet corroborated Adams' grand jury testimony. He testified that phone records indicated Adams and Hickman spoke on the night of Tidwell's death, and about twenty times during the following day and a half. Massiet further stated that Adams "indicate[d] to [him] that Scotty removed packages from the home." Finally, Lois Neal Tidwell's testimony corroborated Hickman's prior involvement in cocaine distribution, and she and Bruce both testified Tidwell had received a shipment of drugs just before the night in question—drugs that were not discovered at his home by the police investigating his death. In sum, a reasonable juror could find that Hickman was guilty of the conspiracy charge.

-9-

## III. Conclusion

For the reasons above, we affirm Hickman's conviction.

_____